U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 NOV 15  AM 10: 44

CLERK

BY ___LAW___
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

William O. Daggett, Jr.;

**Plaintiff;**

-against-

Robert Gaydos, 1SourceAdmin, LLC; and Norvax, LLC;

**Defendants.**

**ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

Civil Action No. _2:16-cv-305_

COMES NOW Plaintiff, William O. Daggett, Jr., by and through the undersigned counsel, and for his Original Complaint against Defendants Robert Gaydos; 1SourceAdmin, LLC; and Norvax, LLC; alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff William O. Daggett, Jr. ("Daggett") invested in a company called 1SourceAdmin, LLC ("1Source"), operated and controlled by Robert Gaydos ("Gaydos"). 1Source offered investors a series of convertible promissory notes (the "Notes") which would pay 4% interest upon demand after they matured, with one exception: if 1Source could issue and sell equity for at least $1,000,000, the Notes would automatically convert into equity of the same kind issued and sold (and would therefore have the benefit of being backed by the $1,000,000 influx of capital). Daggett bought a Note for $100,000. When the Note's maturity approached—with no million-dollar equity

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

offering in sight—Gaydos employed a scheme to avoid the need to repay Daggett.  He convinced Daggett that 1Source was about to be acquired by another company, and that upon the acquisition, Daggett would "be offered a choice between a stock conversion or to be repaid via the" Note's terms.  That claim was a lie, employed to induce Daggett to hold off on demanding repayment.  While Daggett waited, Gaydos (according to his own claims) secured an amendment to the Notes without Daggett's consent, forced a mandatory conversion of the Notes into equity (without notifying Daggett or giving him any choice), left Daggett with a nontransferable equity interest in 1Source, and refused to repay Daggett under the Note.

**PARTIES**

2.      Daggett is an individual residing in Malvern, Pennsylvania.

3.      Gaydos is an individual believed to reside at 12050 Rosemount Drive, Fort Myers, Florida 33913.

4.      1Source is a limited liability company organized under the laws of Delaware, with its principal place of business at 12050 Rosemount Drive, Fort Myers, Florida 33913.

5.      1Source's registered agent is United States Corporation Agents, Inc., 300 Delaware Avenue, Suite 210-A, Wilmington, Delaware 19801.

6.      Gaydos is 1Source's CEO and controlling owner.

7.      Defendant Norvax, LLC ("Norvax") is a limited liability company

Page 2 of 24

organized under the laws of Delaware, with its principal place of business in Chicago, Illinois.

8.      Norvax's registered agent is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9.      On or about July 11, 2016, Norvax acquired 1Source's assets.

10.     Upon information and belief, after Norvax acquired 1Source's assets, Norvax continued operating the same business as 1Source and employed officers and/or executive-level employees who had worked for 1Source.

11.     Upon information and belief, although 1Source still technically exists, there is nothing left of 1Source after Norvax's acquisition of its assets, other than a shell company, with no assets, employees, or operations.

12.     As a result of the preceding transaction, Norvax is 1Source's successor for purposes of liability in this case.

### JURISDICTION AND VENUE

13.     Federal subject matter jurisdiction exists under 28 U.S.C. § 1332.  There is complete diversity between the parties, as set forth above, and Plaintiff seeks damages and equitable relief valued in excess of $75,000, exclusive of interest and costs.

14.     Federal subject matter jurisdiction also exists under 28 U.S.C. § 1331, in that the claims set forth below include violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (the "Exchange Act"); and SEC Rule 10b-5, 17 C.F.R. §

Page 3 of 24

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

240.10b-5, promulgated thereunder.

15.     This Court may further exercise jurisdiction over all state law claims alleged herein pursuant to 28 U.S.C § 1367 because all claims alleged herein form a part of the same case or controversy.

16.     Defendants are subject to personal jurisdiction in this Court because the Subscription Agreement (as defined below) to which the claims in this case relate contains an agreement to submit to the jurisdiction of the federal or state courts of Vermont.  (Ex. A at ¶ 7.7.)

17.     Venue is proper in this Court because the Subscription Agreement (as defined below) to which the claims in this case relate states that all suits "arising out of or based upon" the Subscription Agreement shall be brought in the federal or state courts of Vermont.  (Ex. A at ¶ 7.7.)

### FACTS COMMON TO ALL COUNTS

18.     In or about the spring of 2015, Gaydos and 1Source offered a sale of debt securities in 1Source.

19.     The 1Source debt securities were offered as "Convertible Promissory Notes" (the "Notes") bearing 4% interest.  (Ex. A, Preamble.)

20.     In May of 2015, Daggett purchased a Note from Gaydos and 1Source in the principal amount of $100,000.

21.     Daggett paid $100,000 to 1Source for the Note in or about May of 2015.

Page 4 of 24

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

22.    In addition to the Notes' own terms, the relationship between purchasers of the Notes and Defendants are governed by a Note Subscription Agreement (the "Subscription Agreement").  (Ex. A.)

23.    Daggett executed a true and correct copy of the Note and Subscription Agreement, which were returned to 1Source along with his $100,000 investment, and which were accepted, executed, and held by 1Source.

24.    According to the Notes and the Subscription Agreement, the Notes would automatically convert into equity units of 1Source only upon the occurrence of a "Qualified Equity Offering." (Ex. A at ¶ 6.1.)

25.    The Notes had a "Maturity Date" of June 30, 2016.  (Ex. A, Preamble.)

26.    The Notes' written terms stated that each Note holder, including Daggett, had the right, as of the June 30, 2016 Maturity Date, to "demand payment of the entire outstanding principal balance and all unpaid accrued interest; or . . . continue to hold the Note, in which case the interest rate shall be increased and the Note shall thereafter bear interest at the rate of six percent (6%) per annum . . . ."

27.    The only exception to the foregoing right of payment was in the event that a "Qualified Equity Offering" occurred, involving the issuance and sale of equity for at least $1,000,000.

28.    No Qualified Equity Offering has ever occurred.

29.    On May 17, 2016, with the Maturity Date approaching, Gaydos emailed

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

Daggett, claiming that 1Source was being acquired by another company, that the closing of the acquisition was at "the end of the month," and that "[a]t that time, you will be offered a choice between a stock conversion or to be repaid via the loan agreement of the convertible debt note."

30.     In reliance on Gaydos' statements in his May 17, 2016 email, Daggett waited for information about the acquisition.

31.     On the Maturity Date of June 30, 2016, when Daggett could have demanded repayment of the Note pursuant to its terms, he refrained from doing so in reliance on Gaydos' statements in his email of May 17, 2016; based on that email, Daggett believed that he would have a choice between Note conversion and repayment once he received information about 1Source's acquisition.

32.     On July 13, 2016 (13 days past the Maturity Date), Gaydos claimed in an email to Daggett that 1Source had *already* been acquired by Norvax on July 11, 2016.

33.     The July 11, 2016 acquisition of 1Source by Norvax was not disclosed to Daggett prior to July 13, 2016.

34.     On July 21, 2016, based on his review of the limited information provided by Gaydos about the acquisition of 1Source by Norvax, Daggett sent an email to Gaydos demanding repayment of the Note with interest pursuant to the Note's terms.

35.     On July 29, 2016, Gaydos responded by email to Daggett's repayment demand, claiming for the first time that Daggett's Note had *already* been converted into

Page 6 of 24

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

equity, and that Daggett had been stripped of his opportunity to demand repayment.

36.     According to documents provided by Gaydos and claims made by Gaydos in an email to Daggett, the Notes (including Daggett's) were purportedly amended without Daggett's consent or knowledge.

37.     The Notes contained a provision stating that they could be amended by a "written instrument that amends all the outstanding Notes in a like manner that is executed by the holders of a majority of the aggregate outstanding principal balance of all the then issued Notes and [1Source]."

38.     Gaydos has never provided Daggett with a copy of the purported Note amendment showing that it was signed by the requisite group of Note holders.

39.     Gaydos provided only an unsigned copy of the purported amendment to the Notes, which stated that, upon the acquisition of 1Source by Norvax, the Notes would "automatically, and without any further action by the holders of the Notes," convert into equity units in 1Source; the repayment right of the Note holders would thereby be extinguished, despite the lack of any Qualified Equity Offering as originally required by the Note and Subscription Agreement terms.

40.     Based on Gaydos' claim that Norvax acquired 1Source on July 11, 2016, the foregoing amendment to the Notes would mean that the Notes automatically converted to equity on the acquisition date of July 11, 2016, two days before any information about the acquisition was disclosed to Daggett, and before he had any opportunity to choose

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

between repayment or conversion as Gaydos had previously (and falsely) represented he would.

41.     Gaydos' own statements about the 1Source acquisition, as well as documents he sent to Daggett, reveal that the acquisition provided Gaydos with substantial benefits; such as an employment position as President of Norvax until at least 2019, with an annual base salary of $300,000; receipt by Gaydos of the balance of the $250,000 purchase price paid by Norvax, after payment of accounts payable and payroll; and other, well-compensated employment positions within Norvax for Daniel Gaydos and Thomas Gaydos.

42.     A summary of the 1Source acquisition terms provided by Gaydos also states that, as a requirement to close the transaction, 1Source would need to provide Norvax with "a document executed by [1Source]'s current convertible note holders . . . confirming their election to convert to equity in lieu of repayment and interest."

43.     The need to provide a document confirming the Note holders' "election to convert to equity" meant that in order for Gaydos to carry out the acquisition and reap its financial benefits for himself, Gaydos *had* to convince Daggett not to demand repayment of the Note on the Maturity Date, or at any time before the closing of the acquisition.

44.     To induce Daggett not to demand repayment, Gaydos intentionally made the false statements in his email to Daggett on May 17, 2016, which Gaydos knew to be

Page 8 of 24

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

false, claiming that Daggett would have the choice whether to convert or demand repayment of the Note after more information on the acquisition was provided.

45.     At the time he made the foregoing statement, Gaydos had no intention of leaving Daggett with any opportunity to exercise his right to repayment of the Note.

46.     Gaydos' knowledge and intent are made all the more clear by his decision not to disclose any information to Daggett about the purported Note amendment, the acquisition of 1Source, or the attempt to force a Note conversion until two days *after* these transactions were, according to Gaydos, already completed.

47.     Gaydos' concealment of the foregoing transactions from Daggett until they were complete also constitutes an omission of material facts, which rendered Gaydos' May 17, 2016 email to Daggett misleading.

48.     Gaydos' false and misleading statements were material to Daggett; in response to Gaydos' May 17, 2016 email, Daggett sent an email back the following day, stating his expectation that he would "decide personally" whether to convert his Notes or demand repayment once he learned "what firm actually acquired [1Source] and what the deal is."

49.     The foregoing email by Daggett demonstrates that he made his decision to wait and learn "what the deal is," before demanding repayment under the Notes, in reliance on Gaydos' false statements.

50.     Daggett's reliance on Gaydos' misrepresentations was justified because

Page 9 of 24

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

nothing in Gaydos' statements, on their face, showed that they were false.

51.     As a result of Gaydos' false statements and omissions, Daggett has suffered harm in that he has not been repaid for his $100,000 investment plus interest under the Note, and instead was forced into an exchange of his Note for an equity interest in 1Source.

52.     The equity interest in 1Source that has been forced upon Daggett is materially different from the Notes, in that the Notes had a fixed rate of interest and time for repayment, while the equity interest in 1Source presents only a speculative potential for some unspecified return at an unknown time in the future.

### COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

53.     Plaintiff hereby alleges and incorporates each and every allegation set forth in preceding paragraphs of this Complaint as though fully set forth herein.

54.     As set forth herein, Defendants, by use of the means or instrumentality of interstate commerce, or of the mails, or of the facilities of a national security exchange in connection with the purchase and sale of securities: (a) have employed devices, schemes, and artifices to defraud Plaintiff; (b) have made untrue statements of material fact, and have omitted and failed to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) have engaged in transactions, acts, practices and courses of business

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

which operated or would operate as a fraud or deceit upon others.

55.     Gaydos' email to Daggett on May 17, 2016, as alleged in detail herein, contained misrepresentations to Daggett regarding the "choice" he would be given between conversion and repayment.

56.     Gaydos' subsequent failure to disclose the purported Note amendment and conversion of Daggett's Note until after they had occurred also constituted an omission of material fact, and further rendered Gaydos' other statements misleading.

57.     Gaydos made all of the foregoing misrepresentations and omissions in his capacity as a director, officer, and controlling owner of 1Source, and with authority to act and speak on behalf of 1Source.

58.     The foregoing misrepresentations and omissions were material to Daggett's decision to delay his demand for repayment of the Note long enough for Gaydos to carry out his plan to force a conversion that would exchange Daggett's Note for equity in 1Source.

59.     Daggett justifiably relied on Gaydos' false and misleading statements, as described above, in his decision to delay his demand for repayment, resulting in the forced conversion of the Note.

60.     Defendants obtained an unlawful gain through their misrepresentations and omissions, in that Gaydos obtained the financial benefits of the acquisition of 1Source by Norvax, as detailed above, and 1Source secured the purchase of its assets by

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

Norvax.

61.     As a result of Defendants' conduct, Daggett was damaged as set forth above, including but not limited to the loss of his $100,000 investment in the Note, the interest due under the terms of the Note, and the continuing loss of opportunity to invest the foregoing funds in other, profitable investments.

62.     By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

63.     Defendants' misrepresentations and omissions were done in a willful, wanton, fraudulent, and malicious manner, in complete and reckless disregard for the harm visited upon Plaintiff; as a result, punitive damages should be awarded to punish Defendants and deter others from similar conduct.

64.     WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays that the Court enter judgment against Defendants, jointly and severally, for actual damages, punitive damages, prejudgment and postjudgment interest, costs, attorney's fees and such other relief as the Court deems proper, including but not limited to all relief available pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

## COUNT II

### Violation of the Vermont Uniform Securites Act, 9 V.S.A. § 5501

65.     Plaintiff hereby alleges and incorporates each and every allegation set forth in preceding paragraphs of this Complaint as though fully set forth herein.

66.     As set forth herein, Defendants, in connection with the purchase and sale of securities: (a) have employed devices, schemes, and artifices to defraud Plaintiff; (b) have made untrue statements of material fact, and have omitted and failed to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) have engaged in acts, practices and courses of business which operated or would operate as a fraud or deceit upon others.

67.     Gaydos' email to Daggett on May 17, 2016, as alleged in detail herein, contained misrepresentations to Daggett regarding the "choice" he would be given between conversion and repayment.

68.     Gaydos' subsequent failure to disclose the purported Note amendment and conversion of Daggett's Note until after they had occurred also constituted an omission of material fact, and further rendered Gaydos' other statements misleading.

69.     Gaydos made all of the foregoing misrepresentations and omissions in his capacity as a director, officer, and controlling owner of 1Source, and with authority to act and speak on behalf of 1Source.

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

70.     The foregoing misrepresentations and omissions were material to Daggett's decision to delay his demand for repayment of the Note long enough for Gaydos to carry out his plan to force a conversion that would exchange Daggett's Note for equity in 1Source.

71.     Daggett justifiably relied on Gaydos' false and misleading statements, as described above, in his decision to delay his demand for repayment, resulting in the forced conversion of the Note.

72.     Defendants obtained an unlawful gain through their misrepresentations and omissions, in that Gaydos obtained the financial benefits of the acquisition of 1Source by Norvax, as detailed above, and 1Source secured the purchase of its assets by Norvax.

73.     As a result of Defendants' conduct, Daggett was damaged as set forth above, including but not limited to the loss of his $100,000 investment in the Note, the interest due under the terms of the Note, and the continuing loss of opportunity to invest the foregoing funds in other, profitable investments.

74.     By reason of the foregoing, Defendants violated the Vermont Uniform Securities Act, 9 V.S.A. § 5501.

75.     Defendants' misrepresentations and omissions were done in a willful, wanton, fraudulent, and malicious manner, in complete and reckless disregard for the harm visited upon Plaintiff; as a result, punitive damages should be awarded to punish

Page 14 of 24

Defendants and deter others from similar conduct.

76.     WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays that the Court enter judgment against Defendants, jointly and severally, for actual damages, punitive damages, prejudgment and postjudgment interest, costs, attorney's fees, recission of the conversion of the Note, and such other relief as the Court deems proper, including but not limited to all relief available pursuant to 9 V.S.A. § 5501.

## COUNT III

### Common Law Fraud

77.     Plaintiff hereby alleges and incorporates each and every allegation set forth in preceding paragraphs of this Complaint as though fully set forth herein.

78.     Gaydos and 1Source were under an obligation and duty to communicate truthful information to Daggett in the course of their transactions with him.

79.     Gaydos and 1Source intended that Daggett rely upon their obligation to speak the truth in making decisions regarding the purchase the Note and whether to demand repayment of the Note on the Maturity Date.

80.     Gaydos' email to Daggett on May 17, 2016, as alleged in detail herein, contained misrepresentations to Daggett regarding the "choice" he would be given between conversion and repayment.

81.     Gaydos' subsequent failure to disclose the purported Note amendment and conversion of Daggett's Note until after they had occurred also constituted an omission

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

of material fact, and further rendered Gaydos' other statements misleading.

82.    Gaydos made all of the foregoing misrepresentations and ommissions in his capacity as a director, officer, and controlling owner of 1Source, and with authority to act and speak on behalf of 1Source.

83.    The foregoing misrepresentations and omissions were material to Daggett's decision to delay his demand for repayment of the Note long enough for Gaydos to carry out his plan to force a conversion that would exchange Daggett's Note for equity in 1Source.

84.    Daggett justifiably relied on Gaydos' false and misleading statements as described above in his decision to delay his demand for repayment, resulting in the forced conversion of the Note.

85.    Defendants obtained an unlawful gain through their misrepresentations and omissions, in that Gaydos obtained the financial benefits of the acquisition of 1Source by Norvax, as detailed above, and 1Source secured the purchase of its assets by Norvax.

86.    As a result of Defendants' conduct, Daggett was damaged as set forth above, including but not limited to the loss of his $100,000 investment in the Note, the interest due under the terms of the Note, and the continuing loss of opportunity to invest the foregoing funds in other, profitable investments.

87.    Defendants' misrepresentations and omissions were done in a willful,

Page 16 of 24

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

wanton, fraudulent, and malicious manner, in complete and reckless disregard for the harm visited upon Plaintiff; as a result, punitive damages should be awarded to punish Defendants and deter others from similar conduct.

88.     WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays that the Court enter judgment against Defendants for actual damages, punitive damages, prejudgment and postjudgment interest, costs, attorney's fees and such other relief as the Court deems proper under Vermont common law.

## COUNT IV

### Rescission

89.     Plaintiff hereby alleges and incorporates each and every allegation set forth in preceding paragraphs of this Complaint as though fully set forth herein.

90.     Gaydos and 1Source were under an obligation and duty to communicate truthful information to Daggett in the course of their transactions with him.

91.     Gaydos and 1Source intended that Daggett rely upon their obligation to speak the truth in making decisions regarding the purchase the Note and whether to demand repayment of the Note on the Maturity Date.

92.     Gaydos' email to Daggett on May 17, 2016, as alleged in detail herein, contained misrepresentations to Daggett regarding the "choice" he would be given between conversion and repayment.

93.     Gaydos' subsequent failure to disclose the purported Note amendment and

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

conversion of Daggett's Note until after they had occurred also constituted an omission of material fact, and further rendered Gaydos' other statements misleading.

94.    Gaydos made all of the foregoing misrepresentations and ommissions in his capacity as a director, officer, and controlling owner of 1Source, and with authority to act and speak on behalf of 1Source.

95.    The foregoing misrepresentations and omissions were material to Daggett's decision to delay his demand for repayment of the Note long enough for Gaydos to carry out his plan to force a conversion that would exchange Daggett's Note for equity in 1Source.

96.    Daggett justifiably relied on Gaydos' false and misleading statements as described above in his decision to delay his demand for repayment, resulting in the forced conversion of the Note.

97.    Defendants obtained an unlawful gain through their misrepresentations and omissions, in that Gaydos obtained the financial benefits of the acquisition of 1Source by Norvax, as detailed above, and 1Source secured the purchase of its assets by Norvax.

98.    As a result of Defendants' conduct, Daggett was damaged as set forth above, including but not limited to the loss of his $100,000 investment in the Note, the interest due under the terms of the Note, and the continuing loss of opportunity to invest the foregoing funds in other, profitable investments.

Page 18 of 24

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

99.   Because of the foregoing conduct, Daggett is entitled to seek, as an alternative to damages, rescission of the conversion of the Note into equity of 1Source and repayment of the Note according to its terms.

100.   WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays that the Court enter judgment against Defendants and order rescission of the conversion of the Note into equity, repayment of the Note, prejudgment and post-judgment interest at the judgment rate, payment of costs and attorney's fees by Defendants, and other appropriate relief.

## COUNT V

### Breach of Fiduciary Duty

101.   Plaintiff hereby alleges and incorporates each and every allegation set forth in preceding paragraphs of this Complaint as though fully set forth herein.

102.   Upon information and belief, from the time Daggett purchased the Note until the time Norvax acquired 1Source, 1Source was insolvent or was operating in such a financial position that its actions would be reasonably expected to result in insolvency.

103.   Because 1Source was insolvent, or was operating within the zone or vicinity of insolvency, Gaydos owed a fiduciary duty to Daggett as a creditor, requiring Gaydos to act toward Daggett with the utmost honesty, good faith, loyalty and care.

104.   Daggett trusted Gaydos' honesty and good faith in delaying his demand for repayment under the Note.

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

105.    Gaydos betrayed the trust placed in him by Daggett and breached his fiduciary duties to Daggett by abusing his role to engage in a self-dealing, deceptive transaction to Daggett's detriment, as detailed herein.

106.    Gaydos' conduct caused Daggett injuries as described herein, including but not limited to the injuries set forth in paragraph 51.

107.    Gaydos acted in a willful, wanton, fraudulent, and malicious manner, in complete and reckless disregard for the harm visited upon Plaintiff; as a result, punitive damages should be awarded to punish Gaydos and deter others from similar conduct.

108.    WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays that the Court enter judgment against Defendant Robert Gaydos for actual damages, punitive damages, prejudgment and post-judgment interest, costs, attorney's fees and such other relief as the Court deems proper.

## COUNT VI

### Breach of the Implied Covenant of Good Faith and Fair Dealing

109.    Plaintiff hereby alleges and incorporates each and every allegation set forth in preceding paragraphs of this Complaint as though fully set forth herein.

110.    An implied covenant of good faith and fair dealing existed in the Note and Subscription Agreement between Daggett and 1Source.

111.    The misconduct of Gaydos, detailed herein, was carried out by him in his capacity and authority as an agent for 1Source, to the benefit of 1Source and its

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

successor, Norvax.

112.    The foregoing misconduct caused Daggett injuries as described herein, including but not limited to the injuries set forth in paragraph 51.

113.    The foregoing misconduct was carried out in a willful, wanton, fraudulent, and malicious manner, in complete and reckless disregard for the harm visited upon Plaintiff; as a result, punitive damages should be awarded to punish Defendants and deter others from similar conduct.

114.    WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays that the Court enter judgment against Defendants for actual damages, punitive damages, prejudgment and post-judgment interest, costs, attorney's fees and such other relief as the Court deems proper.

## COUNT VII

### Breach of Contract

115.    Plaintiff hereby alleges and incorporates each and every allegation set forth in preceding paragraphs of this Complaint as though fully set forth herein.

116.    Pursuant to the Note and Subscription Agreement, 1Source was obligated to pay Daggett the Note's principal plus interest upon demand made at any time after the Maturity Date, in the absence of a Qualified Equity Offering.

117.    Daggett demanded repayment after the Maturity Date.

118.    At the time of Daggett's demand, no Qualified Equity Offering had

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

occurred.

119.    Despite Daggett's demand, 1Source has failed and refused to pay the amount due under the Note.

120.    Should it be determined that the conversion of Daggett's Note into equity was invalid because it was procured by fraud and/or because the Note Amendment was not executed in conformity with the terms of the Notes, then the failure and refusal of 1Source to pay the amount due under the Note is a breach of the Note and Subscription Agreement.

121.    Norvax is 1Source's successor for purposes of the liability alleged herein.

122.    WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays that the Court enter judgment against 1Source and Norvax for actual damages, prejudgment and post-judgment interest, costs, attorney's fees and such other relief as the Court deems proper.

## COUNT VIII

### Restitution

123.    Plaintiff hereby alleges and incorporates each and every allegation set forth in preceding paragraphs of this Complaint as though fully set forth herein.

124.    Plaintiff paid $100,000 to 1Source, as an investment in the Notes.

125.    1Source and its successor, Norvax, derived the benefit of the $100,000 invested by Daggett.

Page 22 of 24

126.    Should it be determined that the Note and Subscription Agreement fail for lack of consideration, lack of a fully executed written instrument, or for any other reason, Plaintiff is entitled to restitution as an equitable remedy against 1Source and Norvax.

127.    WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays that the Court enter judgment against 1Source and Norvax and enter an order for restitution in the amount of $100,000, prejudgment and post-judgment interest at the judgment rate, costs, attorney's fees and such other relief as the Court deems proper.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff William O. Daggett, Jr., respectfully prays for all of the relief sought pursuant to each of the foregoing Counts, as set forth therein, including but not limited to:

a) Actual damages in excess of $75,000, to compensate Plaintiff for the loss of his investment and reasonable gains thereon;

b) Punitive damages;

c) Prejudgment and post-judgment interest;

d) Attorney's fees;

e) Costs;

f) Equitable relief, including but not limited to rescission of the conversion of the Note and/or restitution for the amount paid by Plaintiff to Defendants;

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT

and

g) Other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Date:  November 9, 2016

John D. Stasny
Attorney for Plaintiff
Woolmington, Campbell, Bernal & Bent, P C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
john@greenmtlaw.com
802-362-2560

WOOLMINGTON, CAMPBELL, BERNAL & BENT, P.C.

MANCHESTER, VERMONT